**UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
URBANA DIVISION**

---

| | |
|---|---|
| **UNITED STATES OF AMERICA,** ) | |
| ) | |
| **Plaintiff,** ) | |
| v. ) | Case No. 07-CR-20043 |
| ) | |
| **FREDDELL BRYANT,** ) | |
| ) | |
| **Defendant.** ) | |

## OPINION

This case is before the court for ruling on the Motion to Suppress Evidence (#15) filed by Defendant, Freddell Bryant (Freddell). This court has carefully reviewed the transcript of the evidentiary hearing held on July 21, 2008, and has carefully considered the written submissions by the parties. Following this careful and thorough review, Freddell's Motion to Suppress Evidence (#15) is DENIED.

### BACKGROUND

On April 4, 2007, Freddell was charged by indictment (#1) with: (1) knowingly and intentionally conspiring with others, from on or about October 2003 continuing through at least March 2007, to possess with intent to distribute and to distribute a mixture and substance containing cocaine and cocaine base ("crack"), both of which are Schedule II controlled substances, the conspiracy involving 500 grams or more of a mixture and substance containing cocaine and 50 grams or more of a mixture and substance containing cocaine base ("crack"), in violation of 21 U.S.C. §§ 846, 841(a)(1) and 841(b)(1)(A) & (B); (2) knowingly possessing, on or about July 12, 2004, 500 grams or more of a mixture and substance containing cocaine, a Schedule II controlled substance, with the intent to distribute it, in violation of 21 U.S.C. § 841(a)(1) & (b)(1)(B)(ii); (3) knowingly possessing a firearm in furtherance of the crime of conspiracy to distribute and to possess

with intent to distribute cocaine and cocaine base ("crack") as charged in Count 1, in violation of 18 U.S.C. § 924(c); and (4) knowingly possessing a firearm after having been previously convicted in a court in the State of Illinois of a crime punishable by imprisonment for a term exceeding one year, in violation of 18 U.S.C. § 922(g)(1). Freddell is represented by retained counsel, Robert L. Rascia, and has been detained pending trial. On November 16, 2007, this court granted defense counsel's oral motion for a psychiatric examination. On March 3, 2008, following receipt of the psychiatric examiner's report, this court found Freddell fully competent to assist counsel at trial.

## MOTION TO SUPPRESS

### I. FACTS

On May 27, 2008, Freddell, through his counsel, filed a Motion to Suppress Evidence (#15). He argued that evidence seized from an apartment on July 12, 2004, should be suppressed. Freddell argued that law enforcement officers came to the apartment to execute an arrest warrant for his brother, Terrance Bryant (Terrance). Freddell argued that Terrance did not consent to a search of the apartment, either orally or in writing. Freddell contended that the search of the apartment was not lawful as it was not a valid search incident to the arrest of Terrance, was not conducted pursuant to a valid search warrant, was not conducted pursuant to valid knowing consent and was not based upon the presence of exigent circumstances. Freddell acknowledged that the Government claims that the warrantless search was justified by Terrance's oral consent, but argued that Terrance did not consent or, if he gave oral consent, his consent was not voluntary. Freddell stated that Terrance would testify that "[h]e submitted to the VMEG agents simply because they came, unannounced, without a warrant, arrested him, and gave him every reason to believe [that] he had no choice but to do everything they told him."

On June 17, 2008, the Government filed its Response to Defendant's Motion to Suppress Evidence (#16). The Government pointed out that Freddell's Motion did not affect all of the charges against him. The Government also argued that, based on the evidence, Freddell's Motion to

Suppress should be denied.

## II.  HEARING

A hearing was held on July 21, 2008.  The Government called two witnesses, Lisa Crowder and Peter Miller.  Crowder testified that, on July 12, 2004, she was employed as a special agent with the Vermilion County Metropolitan Enforcement Group (VMEG), a multijurisdictional drug task force.  Crowder testified that, on that date, she was in a Kmart parking lot conducting a detail regarding the Townway Apartments, known as Danville Apartments.  She was contacted by special agent Peter Miller who stated that he saw Terrance enter Building B of those apartments.  Crowder testified that Terrance was known to VMEG as having an outstanding warrant for his arrest for a previous VMEG case related to an October 2003 search of an apartment in Danville.  Crowder contacted the Vermilion County Sheriff's Department and requested that they send an officer so that Terrance could be arrested.  Crowder testified that she knew which apartment in the complex Terrance was staying in, which was apartment B22, because she had been contacted by a concerned citizen in June 2004.  The concerned citizen said that she had been staying at that apartment for the previous week and also said that Terrance was living there and had large amounts of cocaine and a couple of guns in the apartment.  Crowder testified that, after she received this information from the concerned citizen, she looked into it and determined that the apartment was listed under the name of Ricky Spencer.  Crowder testified that she had information that Terrance and Spencer had been involved in drug trafficking together.

Crowder testified that Miller and two Sheriff's deputies went to apartment B22 to arrest Terrance.  Crowder testified that she was informed that Terrance and another individual, James Martin, had been arrested at the apartment.  Martin was found on a couch during a protective sweep of the apartment and a loaded weapon was located on the couch or in the couch.  Crowder testified that she attempted to obtain a search warrant for the apartment based upon the information she had received from the concerned citizen.  Crowder and her boss, Sue Culp, met with Frank Young, the

Vermilion County State's Attorney. Young asked Crowder to have a dog sniff the outside of the apartment door and also asked her to re-interview the concerned citizen. Miller arranged to have a trained narcotics detection canine sniff the outside of the apartment, and the dog alerted positively on the door. Culp and Crowder re-interviewed the concerned citizen. Crowder relayed this information to Young who said there was not enough information to obtain a search warrant. Crowder said she then went back to the apartment to arrange for transport for the two individuals who had been arrested.

Crowder testified that, after she returned to the apartment, she and Miller spoke to Terrance on the balcony at the back of the apartment. Terrance was handcuffed, but neither Crowder nor Miller had their weapons drawn. Crowder testified that Terrance said he would like to cooperate with them. She testified that she asked him if he would consent for them the search the apartment. Crowder testified that he "initially did not give consent, but he did not deny consent." Crowder testified that Terrance said "he wasn't sure if he wanted to do that at this time." Crowder testified that she asked him again if he wanted to give consent and he said, "Yeah. You can go ahead and search the place. I really want to cooperate." Crowder testified that Terrance "was not Mirandized or anything because we weren't actually questioning him on anything at that time, basically just asking him for consent."

Crowder testified that, after Terrance agreed to the search, Terrance and Martin were then transported to the Danville Public Safety Building. Crowder testified that they searched the apartment and located both powder cocaine and crack cocaine.

During cross examination, Crowder testified that Terrance was arrested at approximately 8:20 p.m. and was removed from the apartment around 11:20 p.m., approximately three hours later. She testified that Terrance was held at the apartment during that entire time period. Crowder also acknowledged that Terrance was not asked to sign a consent to search form and was not told that he did not have to agree to the search. Crowder testified that she did not have a consent to search

form with her but that it would take very little time to write out the language included on a form on a piece of paper. Crowder also stated that, when she first asked Terrance for permission to search the apartment, he said it was not his apartment. Crowder testified that he eventually admitted that he had a key to the apartment and stayed there sometimes.

Miller testified that he was employed by VMEG as a special agent on July 12, 2004. Miller testified that he was in a squad car conducting surveillance in an unrelated investigation when he observed Terrance and another black male walk into the building where apartment B22 was located. Miller testified that he was aware that there was an outstanding warrant for Terrance's arrest. Miller testified that he contacted Crowder with this information. Crowder then contacted two Vermilion County deputies who eventually arrived at that location. One of the deputies knocked on the door of the apartment and Terrance opened the door. Terrance was taken into custody and handcuffed. Miller testified that a protective sweep of the apartment was then performed. Martin was found in the apartment and was placed under arrest because there were two outstanding warrants for his arrest. Miller testified that, during the time Crowder and Culp were attempting to obtain a search warrant, he remained in the apartment with Terrance and Martin. Miller testified that the atmosphere in the apartment was "as relaxed as possible." He stated that they talked about baseball and a few other things. He testified that Terrance "brought up a few times penalties for different crimes involving cocaine and guns and crack and the severity for the penalties for each of those." Miller testified that he told Terrance he could not answer those questions.

Miller also testified regarding the conversation he had with Crowder and Terrance after Crowder returned to the apartment. Miller testified that, during the conversation in which they requested consent to search the apartment, Terrance at first denied that he lived at the apartment but then admitted that he did stay there and had a key. Miller testified that Terrance "stated that he wanted to cooperate with the police, and then he gave consent shortly thereafter."

During cross examination, Miller said that Terrance was handcuffed during the time he was

in the apartment after his arrest and that, during that three-hour time period, he was leaning against the wall in a seated position most of the time. Miller testified that he did not give Terrance any Miranda warnings.

Freddell then called his brother, Terrance, to testify at the hearing. Terrance testified that, on July 12, 2004, he was arrested at apartment B22. He stated that he opened the door of the apartment and three police officers pulled him out into the hallway and handcuffed him. Terrance testified that he was 19 years old at that time. Terrance testified that, shortly after 11:00 p.m. the night of his arrest, two officers spoke with him on the back balcony of the apartment. Terrance testified that the female officer asked him if she could search the apartment. Terrance testified that "I said that they can't search the apartment." He testified that the officers asked him why they couldn't search the apartment and he said "because it wouldn't be a good idea." Terrance testified that he knew he was arrested that day for not going to court in another case involving a search so he "knew what was involved in getting a search warrant and doing a search."

Terrance then testified that the apartment was leased by Ricky Spencer. Terrance testified that Spencer was a friend of his. Terrance testified that Freddell knows Spencer. He testified that he and Spencer actually stayed in the apartment and that Freddell "occasionally came by off and on but not really off, that much." Terrance testified that Freddell lived in Chicago. Terrance testified that, between February 2004 and July 12, 2004, Freddell stayed at the apartment "off and on, like he came over a few times, spent a few nights." Terrance testified that he thought Freddell stayed in the apartment about 20 times. Terrance testified that Freddell and Spencer paid the rent on the apartment. Terrance testified that he, Spencer and Freddell had keys to the apartment. Terrance testified that he did not challenge the search in his own federal case in this court because his attorney said it "wouldn't really make a difference." Terrance stated that he is currently serving a sentence in the Illinois Department of Corrections for a drug conviction from Livingston County.

During cross examination, Terrance testified that he was at the apartment on two occasions

when Freddell stopped by. He testified that he was informed by telephone regarding the other times Freddell was there. Terrance testified that he, Freddell and Spencer all kept clothes at the apartment. Terrance testified that the utility bills for the apartment were in Spencer's name and paid by Spencer. Terrance acknowledged that he pled guilty before this court to several federal drug charges and was sentenced several months prior to the hearing. Terrance also testified that he remembered that, during his plea colloquy, the prosecutor stated the factual basis for the plea and said that he consented to the agent searching the apartment. Terrance acknowledged that he told this court under oath that the factual basis stated by the prosecutor was substantially correct. Terrance agreed that he did not object and say, "No, no. I didn't consent to a search of the apartment." Terrance also acknowledged that he told this court that he had no objections to his presentence investigation report even though the report included a statement that he consented to a search of Apartment B22. Terrance also stated that he had a prior conviction in Vermilion County for obstruction of justice based upon the fact that he gave a false name to police officers during the October 2003 search.

During re-direct examination, Terrance testified that he told his attorney that he did not consent to the search but his lawyer advised him that, because of the other evidence they had that was recovered at other locations, it would not change the outcome of the case. Terrance testified that, at that point, he did not really care about the search.

Defendant asked this court to take judicial notice of the transcript of the change of plea hearing held on October 12, 2007, in Terrance's case. This court notes that the docket for Terrance's case, Case No. 06-20001, shows that Terrance was charged by indictment on January 4, 2006, pled guilty on October 12, 2007, and was sentenced on May 2, 2008, to a term of 240 months in the Federal Bureau of Prisons which was to be concurrent with his state sentence.

After the hearing, the parties were allowed time to file written argument with this court. Freddell filed a Memorandum (#22) on September 12, 2008, the Government filed a Response (#23) on October 3, 2008, and Freddell filed a Reply (#24) on October 9, 2008. The Motion to Suppress

Evidence is now fully briefed and ready for ruling.

### III.  ANALYSIS

### A.  STANDING

The Fourth Amendment's protection against illegal searches and seizures is a personal right that can only be invoked by the individual whose rights are violated. United States v. Swift, 220 F.3d 502, 510 (7th Cir. 2000). The burden is on the defendant to establish that he has a protected Fourth Amendment interest in the place searched. See United States v. Figueroa-Espana, 511 F.3d 696, 704 (7th Cir. 2007). To establish that he has "standing" to claim that his Fourth Amendment rights were violated, a defendant bringing a motion to suppress "must demonstrate that he had a legitimate expectation of privacy in the premises searched or the items seized." United States v. Torres, 32 F.3d 225, 229-30 (7th Cir. 1994); see also Rakas v. Illinois, 439 U.S. 128, 130 n.1 (1978). A reasonable expectation of privacy is infringed when: (1) the defendant exhibits an actual or subjective expectation of privacy; and (2) the expectation is one that society is prepared to recognize as reasonable. United States v. Mendoza, 438 F.3d 792, 795 (7th Cir. 2006), citing Katz v. United States, 389 U.S. 347, 361 (1967). "[T]his reasonable expectation of privacy must be demonstrated to the Court." Mendoza, 438 F.3d at 795. The Seventh Circuit has stated that "without an affidavit or testimony from the defendant, it is almost impossible to find a privacy interest." Mendoza, 438 F.3d at 795, quoting United States v. Ruth, 65 F.3d 599, 605 (7th Cir. 1995). The court in Ruth explained that this is "because this interest depends, in part, on the defendant's subjective intent and his actions that manifest that intent." Ruth, 65 F.3d at 605.

In this case, Freddell did not testify or present this court with an affidavit. Instead, Freddell presented the testimony of his brother, Terrance. In his Memorandum (#22), Freddell argues that he has met his burden to show that he has a protected privacy interest in apartment B22 based upon Terrance's testimony that Freddell lived in the apartment, had a key to the apartment and kept

clothing at the apartment. Freddell noted that several factors have been recognized as relevant to a determination regarding a legitimate expectation of privacy in the area searched, including: (1) whether the defendant has a possessory interest in the place searched; (2) whether he has a right to exclude others therefrom; (3) whether he has exhibited a subjective expectation that the place remain free from governmental invasion; (4) whether normal precautions were taken to protect his privacy; and (5) whether he was legitimately on the premises. See United States v. Mitchell, 64 F.3d 1105, 1109 (7th Cir. 1995). Freddell argued that, since he is a tenant, he has a possessory interest in the place searched and a right to exclude others therefrom. Freddell specifically argued that he "believed he had an expectation of privacy in his apartment."

      This court agrees with the Government that Freddell has not met his burden to show an actual or subjective expectation of privacy in apartment B22. This court first concludes that Terrance's testimony at the hearing was not credible. This court agrees with the Government that Terrance is a three-time convicted felon whose testimony at the hearing was inconsistent with statements he previously made to this court. This court further agrees that Terrance's manner while testifying was not candid. In addition, Terrance provided a rather implausible explanation regarding why Freddell paid one-half of the rent for the apartment and did not testify convincingly regarding the number of times Freddell was at the apartment. This court therefore concludes that the factors listed by Freddell do not support a finding that Freddell had a protected Fourth Amendment interest in apartment B22. This court concludes: (1) there was no credible evidence that Freddell had a possessory interest in the apartment; (2) Terrance's testimony does not support a finding that Freddell had a right to exclude others from the apartment because the evidence showed that the apartment was listed in Spencer's name and Terrance testified that he and Spencer had keys and stayed at the apartment; (3) Freddell presented no testimony or evidence that he exhibited a subjective expectation that the place remain free from governmental invasion; (4) Freddell presented no testimony or evidence that he took normal precautions to protect his privacy; and (5) Freddell

was not on the premises legitimately or otherwise at the time of the search and, while Terrance testified that Freddell stayed at the apartment 20 times in a seven month period, Terrance testified that he only saw Freddell there twice. Most importantly, Freddell presented absolutely no evidence to support his assertion that he "believed he had an expectation of privacy" in the apartment. See Mendoza, 438 F.3d at 795; Ruth, 604-05

For all of the reasons stated, this court concludes that Freddell's motion must be denied because he did not meet his burden to show that he had a Fourth Amendment interest in apartment B22.

## 2. CONSENT

This court further concludes, however, that even if Freddell has standing to challenge the search of apartment B22, the Government has shown that the search was valid based upon consent. The Fourth Amendment prohibition against warrantless searches does not apply when an individual consents voluntarily to the search. See United States v. Johnson, 495 F.3d 536, 541 (7th Cir. 2007); United States v. Sandoval-Vasquez, 435 F.3d 739, 744 (7th Cir. 2006), citing Schneckloth v. Bustamonte, 412 U.S. 218, 219 (1973).

At the hearing, Terrance testified that he did not give consent for the officers to search the apartment. Freddell argued only briefly in his Memorandum that no consent was given to search the apartment. This court rejects this argument. This court concludes that Crowder and Miller gave credible testimony that Terrance consented to the search of apartment B22. This court further concludes that Terrance's testimony that he did not give consent was not credible and directly contradicted his previous statement to this court that the factual basis for his guilty plea, which included a statement that he consented to the search, was "substantially correct."

Freddell argued at length, however, that the evidence shows that Terrance did not voluntarily consent to the search. Freddell focused on the lengthy period of time Terrance was held, handcuffed, at the apartment before he was asked for consent to search, his young age, and the fact

that Terrance was not given Miranda warnings or told that he could refuse to consent. Freddell argues that Terrance "could only have felt he had no choice." Freddell also pointed out that Terrance did not sign a consent form. Freddell argued that, based upon the totality of the circumstances, any consent obtained from Terrance was not valid.

The Government bears the burden of proving by a preponderance of the evidence that consent was given freely and voluntarily. Johnson, 495 F.3d at 541. "Voluntary means the 'consent was not the product of duress or coercion, express or implied.'" United States v. Bernitt, 392 F.3d 873, 876-77 (7th Cir. 2004), citing Schneckloth, 412 U.S. at 227. A determination of voluntariness does not ride on the presence or absence of a single controlling factor, but depends on the "totality of all the circumstances." Johnson, 495 F.3d at 541. The court must make a "careful scrutiny of all the surrounding circumstances." Schneckloth, 412 U.S. at 226; see also United States v. Strache, 202 F.3d 980, 985 (7th Cir. 2000). Among the factors to consider are: "(1) the person's age, intelligence and education, (2) whether he was advised of his constitutional rights, (3) how long he was detained before he gave his consent, (4) whether his consent was immediate, or was prompted by repeated requests by the authorities, (5) whether any physical coercion was used, and (6) whether the individual was in police custody when he gave his consent." Johnson, 495 F.3d at 542. Other factors include the nature of the police questioning, the environment where the questioning took place, the possible vulnerable subjective state of the person consenting, and the consenting party's knowledge of the right to refuse consent. United States v. Nafzger, 965 F.2d 213, 216 (7th Cir. 1992). The mere lack of advice that consent can be refused does not automatically render a consent to search involuntary. See, e.g., United States v. Grap, 403 F.3d 439, 443 (7th Cir. 2005) (detective's failure to advise of right to refuse consent to search did not undermine the voluntary nature of the consent). In addition, a consent to search can be voluntary, notwithstanding the fact that it was given when the person consenting was in custody without having received Miranda warnings. See United States v. Renken, 474 F.3d 984, 987-88 (7th Cir. 2007), cert. denied, 128 S. Ct. 135 (2007);

see also Bernitt, 392 F.3d at 877; Strache, 202 F.3d at 985-86.

In considering whether the Government has shown that Terrance's consent was voluntarily given, this court notes that, while Terrance was only 19 years old at the time of the search, he testified at his guilty plea hearing that he has a high school diploma. In addition, the evidence showed that Terrance had prior experience with a search and, in his Memorandum, Freddell essentially acknowledged that Terrance knew he could refuse to give consent to a search. According to Crowder and Miller, Terrance was only asked twice for consent to search the apartment. They testified that Terrance never denied consent and that his consent was given very soon after he was first asked. The evidence showed that, when Crowder and Miller asked Terrance for consent to search the apartment, they did not have their weapons drawn, did not use physical force and did not make any threats.

This court therefore concludes that the case relied upon by Freddell, United States v. Gillespie, 650 F.2d 127 (7th Cir. 1981) is distinguishable. In Gillespie, five FBI agents and Gary police officers arrived at the defendant's door armed with shotguns and revolvers, while three or four other officers maintained a visible position outside. Gillespie, 650 F.2d at 128-29. The Seventh Circuit concluded that the evidence obtained during the search had to be suppressed, finding that the defendant "could only have felt he had no choice but to let in the officers" because "they were heavily armed, and they carried their weapons in a 'ready' position." Gillespie, 650 F.2d at 129.

In Renken, the Seventh Circuit distinguished Gillespie, and noted that the officers at the Renkens' door "adopted a far less confrontational posture, and there was 'no unnecessary display of weapons.'" Renken, 474 F.3d at 987. In this case, at the time Terrance was asked to consent to a search, there was no display of weapons at all. Therefore, like the court in Renken, this court concludes that nothing like the situation in Gillespie happened here. See Renken, 474 F.3d at 987.

This court recognizes that Terrance was in custody, handcuffed, for a lengthy period of time and was not advised of his Miranda rights. These facts are troubling. See Bernitt, 392 F.3d at 877

(Seventh Circuit found it troubling that the defendant "had been arrested, handcuffed in the back of a police squad car, and not advised of his rights before he gave his consent"). However, in Bernitt, the Seventh Circuit nevertheless found the defendant voluntarily consented to the search. Bernitt, 392 F.3d at 877. Similarly, in Strache, the defendant was in custody, handcuffed, and was not advised of his Miranda rights. Strache, 202 F.3d at 986. The Seventh Circuit found that the district court did not err in concluding that the defendant voluntarily consented to the search, noting that "the police did not badger him for information or consent, nor physically abuse or pressure him." Strache, 202 F.3d at 986.

In this case, as well, the evidence showed that Crowder and Miller did not badger Terrance for consent and did not physically abuse or pressure him. This court recognizes that Terrance was held in custody for a much lengthier period of time prior to giving consent than was the case in Bernitt or Strache. However, Miller testified that the time Terrance was held in custody at the apartment was "as relaxed as possible" and that they discussed baseball and other topics during that time. Freddell did not present any contrary evidence regarding that period of time. This court therefore concludes that the evidence presented at the hearing showed that Terrance was not under duress and was not coerced into giving consent to search the apartment. This court concludes that the totality of the circumstances shows that Terrance voluntarily consented to the search. See Bernitt, 392 F.3d at 877; Strache, 202 F.3d at 986.

IT IS THEREFORE ORDERED THAT:

(1) Defendant's Motion to Suppress Evidence (#15) is DENIED.

(2) This case remains scheduled for a status conference on October 28, 2008 at 1:15 p.m.

ENTERED this 24th day of October, 2008

**s/ Michael P. McCuskey**
MICHAEL P. McCUSKEY
CHIEF U.S. DISTRICT JUDGE