E-FILED
Friday, 12 November, 2021  04:33:34 PM
Clerk, U.S. District Court, ILCD

1          IN THE UNITED STATES DISTRICT COURT
         FOR THE CENTRAL DISTRICT OF ILLINOIS
2                   URBANA DIVISION

3

4    THE UNITED STATES OF          )
     AMERICA,                      )
5                                  )
                Plaintiff,         )
6                                  )
           vs.                     )   No. 07-20043
7                                  )
     FREDDELL BRYANT, also known   )
8    as FREDELL BRYANT,            )
                                   )
9               Defendant.         )

10

11

12

13

14                  CHANGE OF PLEA
15         BY DEFENDANT FREDDELL BRYANT
     BEFORE THE HONORABLE CHIEF JUDGE MICHAEL P. McCUSKEY
16               MARCH 24TH, 2009
                  10:30 A.M.
17

18

19

        Jill Nicole Stevens:  CSR # 084-004212
20

     Area Wide Reporting and Video Conferencing
21            301 West White Street
          Champaign, Illinois  61820
22             (800) 747-6789

23

24

25

2

1                                    <u>INDEX</u>

2
        APPEARANCES:
3
        For the Plaintiff:
4                Eugene L. Miller
                 Assistant U.S. Attorney
5                201 South Vine
                 Urbana, Illinois  61801
6                (217) 373-5875
                 eugene.miller@usdoj.gov
7
        For the Defendant:
8                Robert L. Rascia
                 RASCIA & DeCASTRO, LTD.
9                Attorneys at Law
                 650 North Dearborn, Suite 700
10               Chicago, Illinois  60610
                 (312) 994-9100
11               rrascia@rascia-decastro.com

12

13

14

15

16

17

18

19

20

21

22

23

24

25

```
 1                    10:47 a.m.

 2            THE COURT:  This is the United States of

 3   America versus Freddell Bryant, Case

 4   Number 07-20043.

 5            Present in open court is the Defendant,

 6   Freddell Bryant, accompanied by his attorney, Robert

 7   Rascia; the United States of America represented by

 8   its Assistant U.S. Attorney, Eugene Miller.

 9            In this case, the Defendant was indicted

10   by a grand jury in the Central District of Illinois

11   on April the 4th, 2007.

12            In the indictment, the Defendant is

13   charged in Count 1, from on or about October 2003

14   and continuing through at least March 2007, in

15   Vermilion County, in the Central District of

16   Illinois and elsewhere, that Freddell Bryant,

17   Defendant herein, did knowingly and intentionally

18   conspire with others, both known and unknown to the

19   grand jury, to possess with intent to distribute and

20   to distribute a mixture and substance containing

21   cocaine and cocaine base "crack," both of which are

22   Schedule 2 controlled substances, and the conspiracy

23   involved 500 grams or more of a mixture and

24   substance containing cocaine and 50 grams or more of

25   a mixture and substance containing cocaine base
```

1    "crack" in violation of Title 21, United States Code

2    Sections 846, 841(a)(1) and 841(b)(1) (A) and (B).

3            Page 2 of the indictment goes through the

4    objects of the conspiracy, means and methods of the

5    conspiracy.  Acts in furtherance of the conspiracy

6    are set forth on Page 3 of the indictment.

7            Page 4, Count 2, charges that on or about

8    July 12, 2004 in Vermilion County, in the Central

9    District of Illinois, Freddell Bryant, also known as

10   Fredell Bryant, Defendant herein, did knowingly

11   possess 500 grams or more of a mixture and substance

12   containing cocaine, a Schedule 2 controlled

13   substance, with the intent to distribute it in

14   violation of Title 21, United States Code

15   Section 841(a)(1) and 841(b)(1)(B)(ii).

16           Count 3 charges that on or about

17   October 17, 2003; July 12, 2004; July 25, 2005, in

18   the Central District of Illinois, Freddell Bryant,

19   Defendant herein, did knowingly possess a firearm in

20   furtherance of the crime of conspiracy to distribute

21   and to possess with intent to distribute cocaine and

22   cocaine base "crack" as charged in Count 1, in

23   violation of Title 18, United States Code

24   Section 924(c), Section 2, aiding and abetting, and

25   the case of Pinkerton v. The United States --

1    that's P-i-n-k-e-r-t-o-n -- 328 United States 640,

2    1946 Supreme Court decision as to Pinkerton

3    liability.

4            Count 4 of the grand jury charges that on

5    or about July 25th, 2005, in Vermilion County, in

6    the Central District of Illinois, Freddell Bryant,

7    Defendant herein, having been previously convicted

8    in a court in the State of Illinois of a crime

9    punishable by imprisonment for a term exceeding one

10   year, did knowingly possess in and affecting

11   commerce a firearm, that is a Ruger Model "P" as in

12   Patrick 89 "DC" as in District of Columbia,

13   9-millimeter pistol, Serial Number 304-34833, in

14   violation of Title 18, United States Code

15   Sections 922(g)(1).

16           The Defendant has pled not guilty,

17   demanded a trial by jury.  That jury trial has been

18   set for jury selection at nine o'clock on tomorrow's

19   date, Wednesday, March 25th.

20           The United States of America in this case,

21   on February 13th, 2009, Docket Number 31, filed an

22   "Information to Establish Prior Conviction" in this

23   case, which enhances the penalty to mandatory

24   minimum life imprisonment.

25           Mr. Bryant, I have before me a proposed

1   plea agreement and cooperation agreement in this

2   case.  Is that your signature on Page 19?

3           DEFENDANT BRYANT:  Yes.

4           THE COURT:  And you can just pull that

5   microphone over in front of you.

6           Mr. Miller, is that your signature on

7   Page 19?

8           MR. MILLER:  It is, Your Honor.

9           THE COURT:  And, Mr. Rascia, is that your

10  signature on Page 18?

11          MR. RASCIA:  Yes, Your Honor.

12          THE COURT:  Mr. Bryant, is it your desire

13  at this time to change your plea from not guilty to

14  guilty as to Counts 1, 2, and 3 of the indictment?

15          DEFENDANT BRYANT:  Yes.

16          THE COURT:  Is it also your desire at this

17  time to waive your right to a trial by jury, present

18  this plea to the Court and ask the plea to -- ask

19  the Court to accept the plea agreement entered into

20  by you, your attorney, and the Government?

21          DEFENDANT BRYANT:  Yes, sir.

22          THE COURT:  Please stand, raise your right

23  hand and you will be administered an oath.

24          (At this point in the proceedings, the

25          Clerk administered the oath.)

1          DEFENDANT BRYANT:  Yeah, I do.

2          THE CLERK:  Thank you.

3          THE COURT:  Just move that microphone so

4    it's over in front of you.  It will come all the way

5    over and you can pull it down so you can speak

6    directly into it.

7          Before I can accept your guilty plea in

8    this case, Mr. Bryant, there are a number of

9    questions I have to ask you to assure myself that

10   this is a valid plea, meaning that you're doing it

11   freely, voluntarily, knowingly, intelligently, that

12   nobody has forced you, threatened you in any way or

13   promised you anything other than what's in the plea

14   agreement to get you to plead guilty.

15         So if at any time you don't understand a

16   question I ask and want me to repeat it, please say

17   so and I will gladly do it.  If at any time you want

18   to ask a question of the Court, feel free.  I'll

19   gladly answer if I can.  If you want to talk to

20   Mr. Rascia, your attorney, at any time before you

21   answer, please feel free to do that or to ask him

22   any question.  Do you understand that?

23         DEFENDANT BRYANT:  Yes, sir.

24         THE COURT:  It's essential to a valid plea

25   that you answer carefully and truthfully.  You've

1   just been administered an oath.  That means that the

2   answers to my questions will subject you to the

3   penalty of perjury or making a false statement.

4           Both perjury or making a false statement

5   are crimes that, if convicted, you would face up to

6   five years imprisonment, up to a $250,000 fine if

7   you had the ability to pay, and any term of

8   imprisonment would be consecutive to any term you

9   would receive in this case.

10          Therefore, it's very necessary that you

11  answer truthfully and carefully.  Do you understand

12  that?

13          DEFENDANT BRYANT:  Yes, sir.

14          THE COURT:  How old are you, Mr. Bryant?

15          DEFENDANT BRYANT:  30 years old.

16          THE COURT:  How far did you go in school?

17          DEFENDANT BRYANT:  9th grade.

18          THE COURT:  And where was that at?

19          DEFENDANT BRYANT:  Tilden.

20          THE COURT:  Tilden Tech in Chicago?

21          DEFENDANT BRYANT:  Yes, sir.

22          THE COURT:  Now, after you left

23  Tilden Tech in Chicago after the 9th grade, did you

24  ever take any further education classes, such as

25  trade, technical, college or junior college classes?

 1          DEFENDANT BRYANT:  No, sir.

 2          THE COURT:  With the education that you

 3   had received through the 9th grade, are you able to

 4   read, write, and understand the English language?

 5          DEFENDANT BRYANT:  Yes, sir.

 6          THE COURT:  Mr. Rascia, how did you review

 7   this plea and cooperation agreement with Mr. Bryant?

 8          MR. RASCIA:  Your Honor, I read it to him

 9   aloud.

10          THE COURT:  The entire agreement?

11          MR. RASCIA:  The entire agreement, word

12   for word.

13          THE COURT:  Did he ask you questions that

14   would indicate that he had an understanding of the

15   document?

16          MR. RASCIA:  He asked me limited

17   questions, Your Honor, but I paused at various times

18   to explain each of the provisions to Mr. Bryant and

19   asked him if he understood.

20          THE COURT:  And do you believe that he

21   understands?

22          MR. RASCIA:  Yes, Your Honor.

23          THE COURT:  And do you have any questions

24   about his mental capabilities to enter into a

25   knowing, voluntary plea today?

1          MR. RASCIA:  No, Your Honor.

2          THE COURT:  Do you have any question about

3    his mental capabilities to understand the plea, the

4    plea agreement, the cooperation agreement, and the

5    procedures that we're going through here in Court?

6          MR. RASCIA:  I believe he understands,

7    Your Honor.

8          THE COURT:  Mr. Miller, this case was

9    obviously investigated by law enforcement agencies

10   over a period of years and you've had a chance to

11   talk with those people and prepare for the jury

12   trial that would take place tomorrow; is that

13   correct?

14         MR. MILLER:  Yes, Your Honor.

15         THE COURT:  Have any of the agents of the

16   Government, any witnesses or anyone given you any

17   information that would cast doubt on Mr. Rascia's

18   opinion or would in any way make you believe that

19   Mr. Bryant is not mentally capable of understanding

20   these proceedings and entering into a knowing,

21   voluntary, and intelligent plea?

22         MR. MILLER:  I have no such information,

23   Your Honor, and I would note that prior to these

24   proceedings, there was an evaluation done of the

25   Defendant that resulted in a finding that the

1 Defendant was competent to proceed at that point,

2 but we're aware of no information that would suggest

3 that the Defendant is not competent to enter into a

4 knowing and intelligent guilty plea.

5          THE COURT:  Now, Mr. Bryant, are you under

6 the care of a doctor for any condition that requires

7 prescription medication?

8          DEFENDANT BRYANT:  No, sir.

9          THE COURT:  Are you taking any

10 prescription medication?

11          DEFENDANT BRYANT:  No, sir.

12          THE COURT:  Have you ever been under the

13 care of a psychiatrist?

14          DEFENDANT BRYANT:  No, sir.

15          THE COURT:  Have you ever been

16 hospitalized or treated for narcotic addiction?

17          DEFENDANT BRYANT:  No, sir.

18          THE COURT:  How do you feel today

19 physically?

20          DEFENDANT BRYANT:  Good.

21          THE COURT:  And in the last 24 hours, have

22 you taken any mood-altering substances, narcotic

23 drugs, medicine or pills?

24          DEFENDANT BRYANT:  No, sir.

25          THE COURT:  In the last 24 hours, have you

1    consumed any alcoholic beverages?

2              DEFENDANT BRYANT:  No, sir.

3              THE COURT:  Do you believe you understand

4    what's happening today?

5              DEFENDANT BRYANT:  Yes.

6              THE COURT:  Will you in your own words,

7    can you tell me what you believe is happening today.

8              DEFENDANT BRYANT:  Pleading guilty.

9              THE COURT:  And by pleading guilty, will

10   there be a jury selection and a jury trial this

11   week?

12             DEFENDANT BRYANT:  No, sir.

13             THE COURT:  And will there ever be a trial

14   in this case if you plead guilty today?

15             DEFENDANT BRYANT:  No, sir.

16             THE COURT:  If I accept your plea and plea

17   agreement, cooperation agreement, do you understand

18   what would be the next proceeding that you would go

19   through in court since it won't be a jury trial?

20             DEFENDANT BRYANT:  Yes, sir.

21             THE COURT:  And what will it be?

22             DEFENDANT BRYANT:  Hearing, sentencing

23   hearing.

24             THE COURT:  Okay.  I think you do have a

25   good idea of how we're proceeding.  The Court has

1   had Mr. Bryant in court many times for many

2   different proceedings in this case, so I've had an

3   opportunity to observe him for extended periods of

4   time in court.

5           I now have the representation of

6   Mr. Rascia and Mr. Miller as to Mr. Bryant's

7   competency.  We, of course, have a previous

8   psychological report and all of those indicate and

9   the Court does find now that Freddell Bryant is

10  fully competent to understand these proceedings and

11  enter into a knowing, voluntary, and intelligent

12  plea.

13          Mr. Bryant, have you had an ample

14  opportunity to discuss your case with Mr. Rascia?

15          DEFENDANT BRYANT:  Yes, sir.

16          THE COURT:  Are you satisfied with his

17  representation?

18          DEFENDANT BRYANT:  Yes.

19          THE COURT:  Now, under the Constitution

20  and the Laws of the United States, a jury trial is

21  your right; it's your personal right, meaning that

22  the Government and Mr. Miller can't take it from

23  you; Mr. Rascia, your attorney, can't take it from

24  you; he can't waive it or give it up; as a judge of

25  this district court, I can't take it from you, but

1    you can waive it and give it up.

2                It's your personal right to keep and go to

3    trial tomorrow; it's your personal right to waive

4    and give up today by pleading guilty.  Do you

5    understand that?

6                DEFENDANT BRYANT:  Yes, sir.

7                THE COURT:  And I understand that you

8    personally wish to give it up, to waive that right

9    to a trial by jury, and to enter into the plea

10   agreement that Mr. Rascia has read to you and that

11   you have signed.  Is that correct?

12               DEFENDANT BRYANT:  Yes, sir.

13               THE COURT:  Anybody force you to do this?

14               DEFENDANT BRYANT:  No, sir.

15               THE COURT:  Anybody threaten you in any

16   way to get you to do this?

17               DEFENDANT BRYANT:  No, sir.

18               THE COURT:  Has anybody promised anything

19   other than what's in this agreement, said "Don't

20   worry, Judge McCuskey will talk about the agreement,

21   but here's our promise.  Don't tell him in court,

22   but here's our promise."  Has anybody said anything

23   like that?

24               DEFENDANT BRYANT:  No, sir.

25               THE COURT:  Has anybody promised or

1    predicted a final sentence in this case?

2              DEFENDANT BRYANT:  No, sir.

3              THE COURT:  And do you understand that

4    right now at this minute you face a mandatory life

5    imprisonment sentence?  You understand that?

6              DEFENDANT BRYANT:  Yes, sir.

7              THE COURT:  And that's not a sentence

8    that's coming from me; that's a sentence that's

9    coming from Congress that says any Defendant who has

10   a prior -- in this case it's, what, two prior

11   qualifying convictions?

12             MR. MILLER:  Yes, Your Honor.

13             THE COURT:  And, Mr. Rascia, we've gone

14   through that before and you've agreed that he has

15   two prior qualifying convictions, right?

16             MR. RASCIA:  Yes, Your Honor.

17             THE COURT:  And convicted the third time,

18   either by a jury or by a plea, faces mandatory life

19   imprisonment.  You understand that?

20             DEFENDANT BRYANT:  Yes, sir.

21             THE COURT:  Now, do you understand that I

22   can't promise you a final sentence because I don't

23   know what cooperation you'll do for the Government,

24   if any, and I don't know if the Government will make

25   a motion which would allow me to sentence you to

1   less than mandatory life.  Do you understand I don't

2   know that?

3           DEFENDANT BRYANT:  Yes, sir.

4           THE COURT:  Do you understand right now

5   you don't know that?  You hope that will happen,

6   right?  You hope they'll do it, but you don't know

7   right now at this second what the Government is

8   going to do at sentencing.

9           DEFENDANT BRYANT:  Yes, Your Honor.

10          THE COURT:  So that's a risk you take, not

11  knowing what the Government will finally do.  Is

12  that a risk you're willing to take?

13          DEFENDANT BRYANT:  Yes, sir.

14          THE COURT:  Anybody force you to say that?

15          DEFENDANT BRYANT:  No, sir.

16          THE COURT:  Threaten you in any way to get

17  you to say that?

18          DEFENDANT BRYANT:  No, sir.

19          THE COURT:  Promise you anything to get

20  you to say that?

21          DEFENDANT BRYANT:  No, sir.

22          THE COURT:  Now, I will make one promise

23  to you and that is if the Government will make a

24  motion for what we call a downward departure from a

25  mandatory minimum sentence under 18 United States

1  Code Section 3553, if they make that motion, I will

2  grant it so that you will not be sentenced to life,

3  but do you understand that if that motion is not

4  made by the Government, there's nothing you can do;

5  there's nothing I can do; your sentence would be

6  life by pleading guilty today?  Do you understand

7  that?

8          DEFENDANT BRYANT:  Yes, sir.

9          THE COURT:  So I'm with you, I hope

10 they'll make the motion, but I don't control them

11 and you don't control them either, right?

12         DEFENDANT BRYANT:  Yes, sir.

13         THE COURT:  Okay.  And we're going to talk

14 about what your cooperation that you're promising to

15 do is and the record should reflect that there's no

16 one in the courtroom other than counsel and court

17 personnel.  Have you ever been through a jury trial

18 before, Mr. Bryant?

19         DEFENDANT BRYANT:  Yes, sir.

20         THE COURT:  Okay.  And was that in one of

21 your cases?

22         DEFENDANT BRYANT:  Yes, sir.

23         THE COURT:  What were you charged with in

24 that case that you went to jury trial?

25         DEFENDANT BRYANT:  I don't remember right

 1  offhand.

 2          THE COURT:  Was it a drug case?

 3          DEFENDANT BRYANT:  No.

 4          THE COURT:  Mr. Rascia, do you know?

 5          MR. RASCIA:  Can I have a second,

 6  Your Honor?

 7          THE COURT:  Yes.

 8          (Pause.)

 9          MR. RASCIA:  Your Honor, Mr. Bryant had a

10  jury trial in a misdemeanor case.

11          THE COURT:  Okay.  And they selected 12

12  jurors and they decided whether you were guilty or

13  not; is that right?

14          DEFENDANT BRYANT:  Yes, sir.

15          THE COURT:  Was that in Cook County?

16          DEFENDANT BRYANT:  Yes, sir.

17          THE COURT:  And what was their verdict?

18  Was it guilty or not guilty?

19          MR. RASCIA:  He was found guilty,

20  Your Honor.

21          THE COURT:  Okay.  And we're going to talk

22  about that procedure because that procedure in Cook

23  County state court may be different than my

24  procedure, so I want you to know exactly what would

25  take place tomorrow and during the rest of your

1    trial so that you know what you're giving up here in

2    federal court.

3              We would bring into the courtroom tomorrow

4    32 jurors and you would -- actually, we'll bring in

5    more than that, but there's 14 chairs in that jury

6    box, we would put 14 chairs in front of the jury box

7    and there's four empty chairs here just to your

8    left.

9              And you're probably saying, "Gee, I don't

10   remember that many people in Cook County."  In a lot

11   of cases and a lot of trials, you wouldn't have that

12   many, but that's the way I do a jury selection so

13   that when I'm satisfied that all 32 of those jurors

14   can understand the rules of court, the requirements

15   that they must follow -- and we'll talk about those

16   shortly -- and I'm satisfied as to the 32, you and

17   Mr. Rascia get to exclude out of this first group of

18   28 ten, the Government six.  16 from 28 would give

19   us our 12 jurors.

20             Because your trial, if it goes to trial

21   tomorrow, would take several days and would go into

22   next week, we would want alternate jurors.  So out

23   of the 28, we would pick 12 and out of those four

24   you and Mr. Rascia get to exclude one, the

25   Government gets to exclude one and we would have two

1  alternates, so that's how we would fill the 14

2  seats.  12 jurors, two alternates.

3          The two alternates would have nothing to

4  say about the case unless one of the 12 became sick

5  or for emergency or who knows what could not serve,

6  then we would have a juror or two to serve as an

7  alternate, but ultimately 12 men and women selected

8  from this district would hear your case.

9          You lived in Vermilion County in Danville;

10  is that right?

11          DEFENDANT BRYANT:  Yes, sir.

12          THE COURT:  Okay.  We're going to talk

13  about how big our district is.  The jurors would

14  come from as far north as Kankakee County; as far

15  south as Edgar County, Paris, Charleston, Mattoon,

16  Tuscola, those counties; east and west from the

17  Indiana line in Danville over to Decatur.

18          With a district that big, I can assure you

19  that we would have jurors who knew nothing about the

20  case, nothing about the witnesses.  In fact, I said

21  we would bring in more than 32 because sometimes

22  somebody says, "I know so and so; I think I know

23  something about this case."  We exclude those.  We

24  have enough jurors that we can exclude everybody

25  that knows something about the case until we get

1  down to a jury that knows nothing about the case and

2  nothing about the witnesses.

3            And the reason for that is I want to make

4  sure that you have as fair a trial as possible so

5  that the only thing that the jurors know is what

6  they see from the witnesses and hear from the

7  evidence and receive the exhibits and judge the case

8  solely on the evidence presented here in court.

9            To find out whether those jurors can be

10  fair and impartial, they have to assure me that

11  they'll follow certain rules, and the first and most

12  important rule is that you are presumed innocent,

13  meaning that you don't have to present any evidence;

14  you don't have to testify.  In fact, you have a

15  constitutional right to remain silent.  The

16  Government can't call you as a witness.

17            So, the jurors have to understand that the

18  whole purpose of a jury trial is to focus on the

19  Government's case.  The Government, to convict you,

20  to convince a jury that you're guilty, has to put on

21  evidence that convinces all jurors, all 12

22  unanimously beyond a reasonable doubt that what you

23  are charged with, that you are guilty beyond a

24  reasonable doubt.

25            And they have to also promise that they

1   will keep each count as a separate trial.  If they

2   would find you guilty in one count, it doesn't mean

3   you are guilty in another.  It means each count,

4   each charge against you, they have to find each and

5   every element guilty beyond a reasonable doubt, all

6   12 agree before they can return a verdict of guilty

7   on any of the four counts against you.

8              In fact, I would instruct the jurors that

9   if they are not convinced beyond a reasonable doubt,

10  they must vote not guilty.  Also, I would instruct

11  the jurors that if you do not testify, it is your

12  constitutional right to remain silent.  They cannot

13  use that against you in any way in determining

14  whether the Government has met its burden of proof

15  beyond a reasonable doubt because you didn't

16  testify.  That is your constitutional right to

17  remain silent.  You have no burden.  No burden

18  shifts to you.  You're not required to prove your

19  innocence.  Any juror that would say that would be

20  excused and the Court would correct the remaining

21  jurors.

22             The burden is always on the Government; it

23  remains with the Government throughout the case.

24  Your presumption of innocence goes into the jury

25  room and you cannot be convicted of any count until

1   and unless all 12 jurors unanimously agree that you

2   are guilty beyond a reasonable doubt of that count

3   and each and every element of that count and only

4   then could you be convicted of anything.

5           Do you have any questions about that,

6   Mr. Bryant?

7           DEFENDANT BRYANT:  No, sir.

8           THE COURT:  Also, you're not required to

9   present evidence, meaning you don't have to bring in

10  any other witnesses.

11          And the reason you're not required to

12  present any evidence at all is because the burden is

13  on the Government, not on you.  It never shifts to

14  you.  You're never required to prove anything.

15          And when I'm satisfied that the jury

16  understands that, then the 32 are qualified, the ten

17  and the six from the 28 gives us 12, each of you

18  excuse one of the alternates, gives us two and we're

19  ready to begin the trial.

20          The Government has to call witnesses.  And

21  I've said they can't call you; they can't make you

22  testify against themselves -- against yourself.  The

23  witnesses they call testify right there.  You can

24  have either one of those seats at that table, but

25  you'll be that close to the witnesses.  That's

1   called your right to confront them, to see them, to

2   hear your accusers.

3           And Mr. Rascia would have a right to

4   object to evidence that he thought was improper

5   under the Federal Rules of Evidence.  He would have

6   the right to cross-examine those witnesses, to talk

7   to you about things that you need and want asked of

8   those witnesses, about their interests, their bias,

9   their motive, why they're testifying against you,

10  and what they have to say.  He can object to

11  questions asked by the Government.

12          And when the Government is complete with

13  presenting all of their witnesses and evidence,

14  Mr. Rascia, if he wishes, will present evidence.  If

15  you wish to testify, it's your constitutional right

16  to testify if you wish also.  But, again, you do not

17  have to; you're not required to and you have no

18  burdens.

19          By pleading guilty today, no jury in here

20  tomorrow, no jury selection, no witnesses in here

21  during the next week, no cross-examination, no

22  objections to evidence, no trial whatsoever.  Do you

23  understand that?  By pleading guilty, none of that

24  will occur.  No trial will take place tomorrow or

25  ever.

1           DEFENDANT BRYANT:  Yes, sir.

2           THE COURT:  And that's how you wish to

3   proceed, by pleading guilty today; is that correct?

4           DEFENDANT BRYANT:  Yes, sir.

5           THE COURT:  Now, another important right

6   that you give up, not just the right to a trial by

7   jury, but you give up the right against

8   self-incrimination by pleading guilty today.

9           During the trial, Mr. Miller can't call

10  you as a witness, but today by pleading guilty, the

11  Court will have to satisfy myself that you are

12  pleading guilty freely and voluntarily, that you

13  understand the charges against you, you understand

14  the rights you're giving up, this plea is freely,

15  voluntarily made, and there is a factual basis for

16  the plea, meaning that I will ask you questions

17  about the factual basis.

18          You'll give up your right against

19  self-incrimination and I'll ask you questions to

20  satisfy myself that you're pleading guilty because

21  you are, in fact, guilty.  Because if today you just

22  said, "Judge, you know, I'm not guilty, but I don't

23  want to waste the time of the jury; it's stressful;

24  there's people that are going to be called as

25  witnesses I don't want called; I just want to get it

1   over with," I would not accept your plea because

2   that would mean you weren't pleading guilty because

3   you were guilty, it means that you would be trying

4   to plead guilty for other reasons.

5          No, I only wish to accept pleas of guilt

6   from people who are pleading guilty because they

7   did, in fact, do what the Government said.

8          So I would be asking you questions to

9   satisfy myself that you're pleading guilty because

10  you are, in fact, guilty and you did, in fact, do

11  what the Government said you did in the indictment

12  and in the plea agreement.  Do you understand that?

13          DEFENDANT BRYANT:  Yes, sir.

14          THE COURT:  Knowing the rights you have,

15  the right against self-incrimination, the right to a

16  trial by jury, the rights that you would be giving

17  up, those same rights, and asking the Court to

18  accept the plea and plea agreement, do you still

19  wish to plead guilty today?

20          DEFENDANT BRYANT:  Yes, Your Honor.

21          THE COURT:  And is it true that Mr. Rascia

22  has read the plea agreement to you in its entirety

23  and that you then signed that plea agreement after

24  asking him questions about it?

25          DEFENDANT BRYANT:  Yes, sir.

1          THE COURT:  And you did that freely and

2    voluntarily?

3          DEFENDANT BRYANT:  Yes, sir.

4          THE COURT:  And you did that knowing that

5    by pleading guilty you would give up your right

6    against self-incrimination and your right to a trial

7    by jury; is that correct?

8          DEFENDANT BRYANT:  Yes, Your Honor.

9          THE COURT:  And knowing also that by

10   pleading guilty you would be facing, at sentencing,

11   a mandatory minimum life sentence with no

12   possibility of parole; do you understand that?

13         DEFENDANT BRYANT:  Yes, sir.

14         THE COURT:  The charges in this case,

15   Mr. Rascia, the indictment, you and Mr. Bryant have

16   previously received a copy of the charges?

17         MR. RASCIA:  Yes, Your Honor.

18         THE COURT:  And, Mr. Bryant, do you want

19   me to read everything in the indictment?

20         DEFENDANT BRYANT:  No, sir.

21         THE COURT:  You understand what you are

22   pleading guilty to?

23         DEFENDANT BRYANT:  Yes, sir.

24         THE COURT:  Mr. Rascia, do you want me to

25   read everything in the indictment?

1          MR. RASCIA:  No, Your Honor.

2          THE COURT:  Mr. Miller?

3          MR. MILLER:  No, Your Honor.

4          THE COURT:  Okay.  Mr. Miller, would you

5    explain in a precise and meaningful manner the

6    essential elements of the offense.

7          And as I understand it, Mr. Rascia,

8    Mr. Bryant is pleading guilty to Counts 1, 2, and 3;

9    Count 4 would be dismissed at the time of

10   sentencing.  Is that right?

11         MR. RASCIA:  Yes, sir.

12         THE COURT:  Is that correct, Mr. Miller?

13         MR. MILLER:  Yes, Your Honor.

14         THE COURT:  So, Mr. Miller, please, in a

15   precise and meaningful manner, read into the record

16   the elements of the offense and, Mr. Bryant, if you

17   wish, you may read along.  It starts on Page 3,

18   Paragraph 6.

19         MR. MILLER:  Your Honor, the three

20   elements to the offense of conspiracy to distribute

21   50 grams or more of cocaine base "crack," as charged

22   in the indictment, the first is that the conspiracy

23   as charged in Count 1 of the indictment existed;

24   second, that the Defendant knowingly became a member

25   of the conspiracy with an intention to further the

1  conspiracy; and third, that the conspiracy involved

2  50 grams or more of cocaine base "crack."

3          When we use the word "conspiracy," it's

4  simply an agreement between two or more persons to

5  accomplish an unlawful purpose.  A conspiracy may be

6  established even if its purpose is not accomplished.

7          The term "knowingly" means the Defendant

8  realized what he was doing.  It was not -- and was

9  aware of the nature of the conduct and did not act

10 in ignorance, mistake, or accident.

11         And as we use the term "cocaine base

12 crack," that's referring to "crack" as it's defined

13 in the United States Sentencing Guidelines, the

14 street form -- the street name for a form of cocaine

15 base usually prepared by processing sodium

16 hydrochloride and sodium bicarbonate and usually

17 appearing in a lumpy, rocklike form.

18         There are two elements to the offense of

19 possession of 500 grams or more of cocaine with the

20 intent to distribute it, as charged in Count 2.

21 First, that the Defendant knowingly possessed

22 500 grams or more of cocaine.  Second, that the

23 Defendant possessed the cocaine with the intent to

24 deliver it to another person.

25         As we know, "possession" is the ability to

1   control an object.  It may exist even when a person

2   is not in physical contact with the object, but

3   knowingly has the power and intention to exercise

4   direction or control over it, either directly or

5   through orders.

6           Count 3 charges the possession of a

7   firearm in furtherance of a direct trafficking

8   crime.  There are two essential elements to that

9   offense.  First, the Defendant admitted to the crime

10  of conspiracy to distribute 50 grams or more of

11  cocaine base "crack," as charged in Count 1 and,

12  second, that the Defendant knowingly possessed a

13  firearm in furtherance of that crime.

14          We know any person who knowingly aids in

15  the commission of an offense may be found guilty of

16  that offense if the person knowingly associates with

17  the criminal activity, participates in the activity

18  and tries to make it succeed and a conspirator is

19  responsible for offenses committed by his fellow

20  conspirators if he was a member of the conspiracy

21  when the offense was committed and if the offense

22  was committed in furtherance of and as a foreseeable

23  consequence of the conspiracy.

24          THE COURT:  Mr. Rascia, do you agree those

25  are the elements of the offense?

1          MR. RASCIA:  Yes, Your Honor.

2          THE COURT:  And, Mr. Bryant, do you have

3    any questions about the elements of the offense?

4          DEFENDANT BRYANT:  No, sir.

5          THE COURT:  As I said before, the

6    Government has filed a notice of your two prior

7    felony drug convictions.  Congress has said that

8    people who are convicted three times of certain

9    qualifying drug felony offenses face mandatory life

10   imprisonment.

11         You're in that category of mandatory life

12   imprisonment without release.  You also face an

13   $8,000,000 fine if you have the ability to pay.

14   Fines are determined on the ability to pay.

15         So a plea to the charge of conspiracy to

16   distribute 50 grams or more of cocaine base "crack,"

17   Count 1, requires a mandatory life imprisonment,

18   unless the Government would make a motion for a

19   downward departure from that sentence.

20         The charge of possession of 500 grams or

21   more of cocaine with the intent to distribute it

22   carries with it a mandatory minimum ten-year period

23   of imprisonment up to life.  And, of course, Count 1

24   is life, so that would take over the sentence for

25   all of the counts.  The fine is a $4,000,000 fine.

 1    If you received a sentence of less than life,

 2    wouldn't it be ten years instead of eight?

 3            MR. MILLER:  Your Honor, on Count -- on

 4    Count 1, the conspiracy, if there was a deviation

 5    from the mandatory minimum, then it would be a

 6    ten-year period of supervised release on Count 1.

 7            THE COURT:  Right, right.  So any sentence

 8    of less than life is a ten-year mandatory period of

 9    supervised release.  And that would take over from

10    the other periods of supervised release, so it would

11    be -- it's a mandatory minimum of ten years, isn't

12    it?

13            MR. MILLER:  It would be on Count 1,

14    Your Honor, if there's a reduction, yes.

15            THE COURT:  Right.  So the fact that

16    Count 2 carries a mandatory minimum of eight,

17    Count 3 carries a mandatory or a maximum of five,

18    the mandatory minimum period of supervised release,

19    if there is a sentence of less than life, would be

20    ten years.  Do you agree, Mr. Rascia?

21            MR. RASCIA:  Yes, Your Honor.

22            THE COURT:  The fine for Count 2 is up to

23    $4,000,000.  Count 3 is up to $250,000.  All of

24    those are based on the ability to pay.  The one

25    thing that is mandatory is a special assessment on

1   each count of $100 for a total of $300.  So if the

2   Court finds that you're indigent and have no ability

3   to pay -- which is the usual case in most criminal

4   cases -- there would be no fine, but there would be

5   a $300 special assessment.

6            And I hope that your nature, extent, and

7   value of your cooperation will cause the Government

8   to make a motion so that you would get a sentence of

9   less than life.  And if that was true, then you

10   would face a mandatory minimum ten-year period of

11   supervised release.

12            Mr. Bryant, do you have any questions

13   about the maximum possible punishment you face by

14   pleading guilty to Count 1, 2, and 3?

15            MR. MILLER:  And, Your Honor, if I may, I

16   don't know if the Court mentioned it, but Count 3 is

17   the 924(c) charge that does carry a minimum of five

18   years imprisonment to the maximum life imprisonment

19   consecutive to any sentence imposed, which

20   does -- would come into play if the sentence on

21   Count 1 is below life.  Then that would come -- that

22   would also --

23            THE COURT:  The consecutive would come in,

24   although actually I've sentenced people to life with

25   a consecutive five years and we've all wondered what

1  the Government does with the body after death since

2  there's five more years to be served.  I hope that's

3  something we don't have to discuss either.

4           But, Mr. Rascia, do you agree if there is

5  a sentence on Count 1 of less than mandatory minimum

6  life, Count 3 would have a five-year -- mandatory

7  minimum five-year period of imprisonment consecutive

8  to whatever Count 1 was if it's less than life?

9           MR. RASCIA:  Yes.

10          THE COURT:  Mr. Bryant, do you have any

11  questions about that?

12          DEFENDANT BRYANT:  No, sir.

13          THE COURT:  Okay.  Any questions about

14  anything I've said about the elements of the offense

15  or the maximum sentence or any mandatory minimum

16  sentence?

17          DEFENDANT BRYANT:  No, sir.

18          THE COURT:  You discussed all that with

19  Mr. Rascia, your attorney, when he read this to you;

20  is that correct?

21          DEFENDANT BRYANT:  Yes, sir.

22          THE COURT:  Okay.  And if you have a

23  question for the Court or any questions for

24  Mr. Rascia, please say so and we'll gladly give you

25  an opportunity to respond.

1              Once again, has anybody threatened you in

2    any way to get you to do this?

3              DEFENDANT BRYANT:  No, sir.

4              THE COURT:  Anybody promised or predicted

5    what your final sentence would be?

6              DEFENDANT BRYANT:  No, sir.

7              THE COURT:  And you discussed the plea

8    agreement with Mr. Rascia before you signed it?

9              DEFENDANT BRYANT:  Yes, sir.

10             THE COURT:  Now, do you understand this is

11   an agreement between you and the Government --

12             DEFENDANT BRYANT:  Yes, sir.

13             THE COURT:  -- for cooperation and

14   assistance and for all the terms and conditions of

15   this?  I didn't sit down with you and discuss this

16   with you in any way, did I?

17             DEFENDANT BRYANT:  No, sir.

18             THE COURT:  Okay.  The Court finds that

19   the plea agreement is in proper form.  I direct that

20   it be filed of record.  And since I don't have the

21   cooperation agreement --

22             THE CLERK:  It's on the original.

23             THE COURT:  I do want to talk about some

24   of the important provisions in this.  The

25   cooperation agreement means that at all times the

1    testimony that you give would be complete and

2    truthful, that you would neither minimize your

3    actions nor fabricate or exaggerate anyone else's

4    actions.  Basically just tell the truth.  Do you

5    understand that?

6              DEFENDANT BRYANT:  Yes, sir.

7              THE COURT:  And it's not necessary for

8    anybody to be convicted.  You just tell the truth

9    about everything that you have been involved with in

10   the Government and don't in any way try to hold back

11   or exaggerate or in any way be untruthful.

12              And then the Government, at the time of

13   sentencing, will inform me of the nature, extent,

14   and value of your cooperation and whether they will

15   make a motion for a downward deviation from the

16   mandatory minimum sentence.  So you understand, I

17   promise you one thing, if they make that motion, you

18   won't receive life.  Do you understand that?

19              DEFENDANT BRYANT:  Yes, Your Honor.

20              THE COURT:  But if they don't make the

21   motion, there's nothing I can do and your sentence

22   must be mandatory life.  Do you understand that?

23              DEFENDANT BRYANT:  Yes, sir.

24              THE COURT:  So I hope that your

25   cooperation is honest, truthful, and that you follow

1   your attorney's advice and that you get that motion,

2   but if it does not happen, there is nothing I can do

3   and your sentence must be life and you understand

4   that; is that right?

5           DEFENDANT BRYANT:  Yes, sir.

6           THE COURT:  Now, let me tell you something

7   that's important.  I know you've got a very good

8   lawyer and you'll listen to your lawyer, but I had a

9   guy who, for some reason, thought he was a rocket

10  scientist.

11          He read the cooperation agreement and the

12  cooperation agreement, attached to it says, "Your

13  client agrees he will provide complete and truthful

14  information to law enforcement officials regarding

15  his criminal conduct and everything he knows or has

16  reason to believe about the criminal conduct of

17  others."

18          He walked across the street to the state

19  court after he had received a downward departure for

20  cooperation, later testified in a state proceeding

21  in a murder case and gave totally false testimony.

22          He was brought back here to have his plea

23  agreement revoked and his theory which he stated

24  was, "I signed federal paper.  I didn't sign state

25  paper.  I didn't promise to tell the truth to the

1    State.  I promised to tell the truth to the Feds.  I

2    was over in state court.  That doesn't count."

3           And then I read, "You'll provide complete

4    and truthful information to law enforcement

5    officials."  Didn't say federal.  It says "any" law

6    enforcement.  Federal, state, local.  He then lost

7    his cooperation and was resentenced dramatically

8    upward.

9           In your case, it would be life.  So the

10   simple thing to do is not try to guess.  Just tell

11   the truth, be complete, be factual, don't hold

12   anything back, don't exaggerate, and usually things

13   work out very well.  Do you have any questions about

14   the cooperation agreement?

15          DEFENDANT BRYANT:  No, sir.

16          THE COURT:  Now, there's something else

17   that's in here that's very important and that is

18   that if you violate the agreement in any way, the

19   Government will seek to vacate it and that's what I

20   said.  It would be life.  Or if they find that you

21   haven't been completely truthful and honest and

22   forthright, they won't make the motion and it will

23   be life.  So it's important to you that you do

24   everything possible to cooperate and assist.

25          Mr. Miller, there is no waiver of the

1    right to appeal; is that correct?

2              MR. MILLER:  That's correct.  We discussed

3    that with Mr. Rascia and he understands in the

4    cooperation agreement that before we would make a

5    motion that those waivers would take place, but the

6    waiver is not made at this time and thus if the

7    motion were not made, the Defendant would have the

8    right to both appeal and collaterally attack his

9    case.

10             THE COURT:  So this isn't a conditional

11   plea?  Because I did make a ruling on a motion to

12   suppress evidence, right?

13             MR. MILLER:  Right, it's not a conditional

14   plea agreement.

15             THE COURT:  So if the Government is going

16   to make a motion for a downward departure under 18

17   3553(e) for a sentence of less than life, you're

18   saying at that point you're going to ask Mr. Rascia

19   and Mr. Bryant to waive their right to appeal, which

20   would include the motion to suppress hearing?  Or

21   would it be conditional at that point?

22             MR. MILLER:  Your Honor, I believe that

23   the motion to suppress is not preserved at this

24   point because it's not a conditional plea that would

25   have to be preserved.

1          THE COURT:  Okay.  I just want to make

2    sure everybody is on --

3          MR. MILLER:  Right.  But as we went to

4    sentencing, as part of the cooperation agreement, if

5    we are -- before we would make the motion, the

6    defense would need to waive the right to appeal and

7    collaterally attack.  If we would not make the

8    motion, they would preserve the right to both appeal

9    and collaterally attack.

10          THE COURT:  Do you have any disagreement

11    with that, Mr. Rascia?

12          MR. RASCIA:  No, Your Honor.

13          THE COURT:  So if the sentence is going to

14    be less than life, you're going to waive the right

15    to appeal and Mr. Bryant understands that?

16          MR. RASCIA:  Yes, Your Honor.

17          THE COURT:  Okay.  Mr. Bryant, do you

18    understand that, that if --

19          DEFENDANT BRYANT:  Yes, sir.

20          THE COURT:  -- you get a sentence of less

21    than life, you won't be able to appeal?  So if it's

22    not quote the sentence you like because you're

23    saying, "Gee, if Judge McCuskey is going to give me

24    less than life, I would like to receive ten years,"

25    which is Count 2, "or something around that," and

1  the sentence is greater than that, do you understand

2  you won't be able to appeal?

3          DEFENDANT BRYANT:  Yes, sir.

4          THE COURT:  Whatever sentence I impose

5  less than life, you won't be able to appeal that

6  sentence.  Do you understand that?

7          DEFENDANT BRYANT:  Yes, sir.

8          THE COURT:  And you won't be able to come

9  in later within two years and collaterally attack

10  it.  Do you understand that?

11          DEFENDANT BRYANT:  Yes, sir.

12          THE COURT:  Okay.  I want to make sure

13  everybody understands.  Is there anything else

14  before we go to the factual basis, Mr. Miller, you

15  think we should discuss?

16          MR. MILLER:  No, Your Honor.

17          THE COURT:  Anything else, Mr. Rascia,

18  that you would like the Court to discuss before we

19  talk about the factual basis?

20          MR. RASCIA:  No, Your Honor.

21          THE COURT:  Okay.  Mr. Bryant, if you want

22  to follow along with the factual basis, it starts on

23  Page 11.

24          Mr. Miller, at this time please indicate

25  what evidence you would present at jury trial this

 1  week that would cause that jury to determine beyond

 2  a reasonable doubt that the Defendant is guilty, as

 3  charged, of all four counts that would go to trial.

 4          MR. MILLER:  Your Honor, if the matter

 5  went to trial beginning tomorrow, although this

 6  would not be all the evidence, this would be a

 7  summary of the evidence the United States would

 8  present.

 9          It would establish that in October of

10  2003, the Defendant, Freddell Bryant, supplied

11  conspirators at the Green Meadows Public Housing

12  Complex in Danville, Illinois with cocaine which

13  some conspirators would sell while other armed

14  conspirators equipped with two-way radios acted as

15  lookouts.

16          On October 17th, 2003, agents of the

17  Vermilion County Metropolitan Enforcement Group

18  executed a search warrant at the Green Meadows

19  Public Housing Complex at 1606 Edgewood Drive,

20  Apartment 101, in Danville, in the Central District

21  of Illinois.  The warrant was based on prior sales

22  of cocaine that had been made from the apartment.

23          Several other conspirators, including

24  Ricky Spencer and Terrance Bryant, were present at

25  the time of the search and during the search, agents

1  found three baggies containing approximately

2  .6 grams of "crack" cocaine, a loaded handgun on a

3  living room table, a digital scale and two two-way

4  radios and a charger.

5        The gun belonged to Ricky Spencer, who

6  acted as a lookout and carried a gun to provide

7  security for the conspiracy.

8        On that same date, agents executed a

9  search warrant at the Danville Apartments at

10  2730 Townway Drive, Apartment B-18, where they found

11  additional two-way radios, $880 in U.S. Currency,

12  and drug packaging materials used by the

13  conspirators.

14        At that time members of the conspiracy

15  were using that apartment that was rented in the

16  name of the Defendant to cook crack or cocaine into

17  cocaine base "crack" and place distribution amounts

18  of "crack" cocaine into bags.

19        During the spring and summer of 2004, the

20  Defendant continued to supply other members of the

21  conspiracy with amounts of cocaine base "crack."

22  The Defendant fronted or provided on a consignment

23  basis his brother, Terrance Bryant, with

24  approximately 63 grams of cocaine and 63 grams of

25  cocaine base "crack" on a weekly basis.  He

1  generally provided other co-conspirators with

2  500 rocks of cocaine base "crack" per occasion on a

3  front in exchange for later payment of $2,000.

4          VMEG agents went to the Danville

5  Apartments and learned that 2730 Townway Drive,

6  Apartment B-22, had been leased in the name of

7  Ricky Spencer beginning in October of 2003, and on

8  July 12th, 2004, agents went to Apartment B-22 and

9  arrested Terrance Bryant, who was there on an

10  outstanding warrant.

11          While conducting a protective sweep of the

12  apartment, agents found co-conspirator J.M. seated

13  on a couch inside the apartment.  Agents checked the

14  immediate surrounding area for weapons and found a

15  Hi-Point Model "C" 9-millimeter pistol with a loaded

16  magazine stuffed down in the couch next to where

17  J.M. was seated.

18          After that search, Terrance Bryant asked

19  Agent Miller questions such as, "What are the

20  penalties for having a gun on you or having a kilo

21  and a gun?"

22          He admitted to agents he had a key to the

23  apartment to let himself in and consented to agents

24  searching the apartment.

25          During the search, agents found a plastic

1   bag containing five individual bags containing

2   625.3 grams of powder cocaine located in the living

3   room air vent.  They found a bag containing

4   22.6 grams of cocaine base "crack" in the kitchen

5   cabinet.  They found $1,600 U.S. Currency in a

6   kitchen cabinet along with a June 2004

7   Illinois Power bill in the name of Ricky Spencer and

8   they found the keys to the apartment on the kitchen

9   breakfast bar.

10          J.M. stated he had purchased cocaine from

11  Terrance Bryant in the past and had seen him in

12  possession of a handgun and stated that Terrance

13  Bryant had previously shown him the 625 grams of

14  cocaine hidden in the vent.

15          Later, at the Illinois State Police lab,

16  Kristin Stiefvater, S-t-i-e-f-v-a-t-e-r, a forensic

17  scientist with the Illinois State Police, determined

18  that the white powder substance was 625.3 grams of

19  cocaine and that the off-white chunky substance was

20  22.6 grams of cocaine base.

21          Later, she submitted the packaging to

22  Tracy Sulwer, S-u-l-w-e-r, of the fingerprint

23  section and she found latent impressions suitable

24  for comparison on the plastic bag that contained the

25  625.3 grams of powder cocaine.

1        She determined that two of the impressions

2    on the outside bag were made by Terrance Bryant and

3    J.M. and she found an impression on one of the

4    inside bags that was made by the Defendant, Freddell

5    Bryant.

6        An examination of the plastic bag that

7    contained the 22.6 grams of "crack" also revealed

8    three suitable latent impressions and she determined

9    that all three of those were made by the Defendant,

10   Freddell Bryant.

11       During the summer of 2004, the

12   conspirator, specifically Terrance Bryant, began

13   supplying Whitney Wright with "crack" cocaine to

14   sell starting with eight balls and she also began

15   holding large amounts of "crack" cocaine for the

16   conspirators, generally holding about four to six

17   ounces of "crack" at a time.

18       When Terrance Bryant lined up a sale, he

19   called Wright, who brought over the cocaine, and he

20   paid her around $200 to $300 to hold the "crack"

21   cocaine for them.

22       On May 3rd, 2005, Terrance Bryant fronted

23   approximately four and a half ounces of "crack"

24   cocaine to Wright, expecting a payment of $6,000.

25   On May 4th, 2005 after having sold about an ounce of

1    the "crack" cocaine, Wright was arrested still in

2    possession of about 100 grams of the "crack" cocaine

3    that Terrance Bryant had fronted to her and the

4    state lab later determined that it was 100.2 grams

5    of a substance containing cocaine base.

6         On July 25th, 2005, VMEG agents searched

7    706 Walnut Street in Danville in the Central

8    District of Illinois where the conspirators were

9    storing drugs and guns.

10        During the search, they seized a Ruger

11   9-millimeter pistol, a Jennings .380 caliber pistol,

12   51.5 grams of cocaine base "crack," a digital scale,

13   drug packaging materials, including kilogram

14   wrappers and a currency counter.

15        While conducting surveillance on the house

16   following the seizure, agents observed three

17   co-conspirators visit the apartment in a van that

18   was registered to the Defendant's mother.

19        Later, Kristin Stiefvater determined, with

20   the Illinois State Police lab, that the off-white

21   chunky substance was 51.5 grams and contained

22   cocaine base.

23        Forensic scientist, Brian J. Long, found

24   one latent fingerprint suitable for comparison on

25   the magazine of the Ruger 9-millimeter pistol and

1  determined that the impression was made by the

2  Defendant, Freddell Bryant.

3          DEA and VMEG agents would testify that the

4  amounts of powder cocaine, 625 grams, and the

5  50 grams of "crack" cocaine seized exceeded personal

6  use amounts and were intended for distribution.

7          The United States believes the evidence

8  would be sufficient to sustain the Defendant's

9  convictions on Counts 1, 2, and 3 of the

10 conspiracy -- I mean of the indictment.

11         THE COURT:  Mr. Rascia, have you received

12 discovery in this case?

13         MR. RASCIA:  I did.

14         THE COURT:  You've had a chance to review

15 the discovery with the factual basis that's

16 contained in the plea agreement?

17         MR. RASCIA:  Yes, Your Honor.

18         THE COURT:  And if that evidence was

19 presented this week and next to a reasonable jury

20 sitting here in East Central Illinois, do you

21 believe that that evidence could cause that jury to

22 find the Defendant guilty beyond a reasonable doubt

23 of Counts 1, 2, and 3?

24         MR. RASCIA:  Yes, Your Honor.

25         THE COURT:  If the Defendant wished to

1   proceed with his jury trial tomorrow, would you give

2   him a vigorous defense at that jury trial?

3          MR. RASCIA:  Yes, Your Honor.

4          THE COURT:  Mr. Bryant, you've

5   had -- well, let me ask you this, Mr. Rascia.  When

6   you read the factual basis to Mr. Bryant, did he in

7   any way dispute it or disagree with it?

8          MR. RASCIA:  No, Your Honor.  I

9   specifically asked him if he had a disagreement with

10  any of those facts.  He advised me he did not.

11         Judge, I would note that in the oral

12  presentation Mr. Miller just gave, he described on

13  Page 14, the second from the bottom paragraph, in

14  Number 5 of that paragraph it says "drug packaging

15  materials" and Mr. Miller just described that as

16  kilogram packaging materials.  That's not what --

17         THE COURT:  That's not what you agreed to?

18         MR. RASCIA:  Well, the only reason I'm not

19  agreeing to it is the discovery materials have just

20  generically described it as packaging materials,

21  which is consistent with the written factual basis.

22         THE COURT:  The Court will consider it as

23  drug packaging materials .  Of course, Probation

24  will refer to it as drug packaging materials when

25  they review the plea agreement.  Now, what they'll

1  find in other police reports is a different matter.

2        MR. RASCIA:  Well, I would imagine that if

3  we had a trial and Mr. Miller wanted to actually

4  bring in those physical items and I looked at them,

5  my opinion may be different --

6        THE COURT:  Right.

7        MR. RASCIA:  -- but I'm just saying for

8  purposes of today --

9        THE COURT:  This is what you agreed to?

10        MR. RASCIA:  -- this is what we agreed to,

11  what's in writing.

12        THE COURT:  And what's in writing is what

13  the Court accepts, drug packaging materials.  I

14  didn't hear him say it.  I mean, I was just reading

15  along in my mind what was said -- I mean what was

16  there and not what was said, so it is drug packaging

17  materials.

18        Mr. Bryant, is it correct that Mr. Rascia

19  read to you the factual basis of what is alleged

20  that you did and Ricky Spencer and Terrance Bryant

21  and others did as part of this conspiracy?  He read

22  that to you?

23        DEFENDANT BRYANT:  Yes, sir.

24        THE COURT:  And you did not dispute it; is

25  that correct?

    1            DEFENDANT BRYANT:  No, sir.

    2            THE COURT:  Is it true that from 2003

    3    through 2005, you were involved in a conspiracy with

    4    others, including Ricky Spencer and Terrance Bryant,

    5    to distribute powder cocaine and "crack" cocaine in

    6    Danville in Vermilion County in the Central District

    7    of Illinois?

    8            DEFENDANT BRYANT:  Yes, sir.

    9            THE COURT:  You were involved in that

   10    conspiracy; is that correct?

   11            DEFENDANT BRYANT:  Yes, sir.

   12            THE COURT:  And you're pleading guilty to

   13    Count 1 of that conspiracy because you did, in fact,

   14    participate with Ricky Spencer, Terrance Bryant, and

   15    others to distribute "crack" cocaine and powder

   16    cocaine in Danville, as charged; is that correct?

   17            DEFENDANT BRYANT:  Yes, sir.

   18            THE COURT:  Also, you were aware that

   19    people were using and possessing guns as part of the

   20    distribution and conspiracy; is that correct?

   21            DEFENDANT BRYANT:  Yes, sir.

   22            THE COURT:  And, in fact, it's alleged in

   23    Count 3 that on October 17, 2003; July 12, 2004;

   24    July 25, 2005, in the Central District of Illinois,

   25    that you did knowingly possess a firearm in

1    furtherance of the conspiracy to distribute and

2    possess with intent to distribute cocaine and

3    cocaine base "crack," as charged in Count 1; is that

4    correct?

5              MR. MILLER:  Your Honor, if I may, that

6    involves Pinkerton liability, so October 17, 2003

7    was a gun possessed by Ricky Spencer; the July 12,

8    2004 was a gun possessed by Terrance Bryant.

9              Both of them have, in fact, pled guilty to

10   possession of those guns, but the July 25th, 2005

11   gun was the only gun which had the Defendant's print

12   that he was charged with as well as the other

13   conspirators.

14             THE COURT:  So do you understand that as

15   part of the conspiracy, you're liable for their

16   possession of weapons in furtherance of the drug

17   conspiracy?  Do you understand that?

18             DEFENDANT BRYANT:  Yes, sir.

19             THE COURT:  And on July 25th, 2005 --

20   you're not pleading guilty to Count 4, but in

21   Count 3, you're pleading guilty to on that date

22   possessing a firearm in furtherance of the drug

23   trafficking crime and conspiracy in distributing

24   cocaine and cocaine base "crack," as charged in

25   Count 1; you're pleading guilty to that because you

1    did, in fact, do that also; is that correct?

2              DEFENDANT BRYANT:  Yes, sir.

3              THE COURT:  And Count 2 charges that on or

4    about July 12, 2004, you, in Vermilion County, in

5    the Central District of Illinois, did knowingly

6    possess 500 grams of a mixture and substance

7    containing cocaine with the intent to distribute.

8    Are you pleading guilty to that because you did,

9    in fact, do that?

10             DEFENDANT BRYANT:  Yes, sir.

11             THE COURT:  So you're pleading guilty to

12   Counts 1, 2, and 3 because you did, in fact, do what

13   the Government has charged you with in the

14   indictment; is that correct?

15             DEFENDANT BRYANT:  Yes, Your Honor.

16             THE COURT:  Now, have you ever seen powder

17   cocaine cooked?

18             DEFENDANT BRYANT:  Yes, sir.

19             THE COURT:  So you know that it goes from

20   the powdery form into a hard rocklike substance and

21   looks and feels different from powder cocaine?

22             DEFENDANT BRYANT:  Yes, Your Honor.

23             THE COURT:  In this conspiracy, it was a

24   conspiracy to distribute both powder and "crack"

25   cocaine; is that correct?

1          DEFENDANT BRYANT:  Yes, Your Honor.

2          THE COURT:  The Court -- has anybody

3   forced you to say these things or threatened you in

4   any way to get you to admit that you're pleading

5   guilty to Counts 1, 2, and 3?

6          DEFENDANT BRYANT:  No, sir.

7          THE COURT:  Are you asking me to accept

8   your plea, enter a judgment of conviction to

9   Count 1, 2, and 3, vacate your right to a trial by

10  jury tomorrow and waive that forever?

11         DEFENDANT BRYANT:  Yes, Your Honor.

12         THE COURT:  Are you asking me to accept

13  your cooperation agreement also as part of the plea

14  agreement?

15         DEFENDANT BRYANT:  Yes, Your Honor.

16         THE COURT:  You're doing this freely and

17  voluntarily --

18         DEFENDANT BRYANT:  Yes, Your Honor.

19         THE COURT:  -- because you are, in fact,

20  guilty of Counts 1, 2, and 3 and you want to enter

21  into the cooperation agreement and plea agreement

22  with the Government?

23         DEFENDANT BRYANT:  Yes, Your Honor.

24         THE COURT:  The Court accepts the plea as

25  to Count 1, 2, and 3, finds that the Defendant,

1    Freddell Bryant, is fully competent to make the

2    plea, that he's doing so freely, voluntarily,

3    knowingly, intelligently, with no force, threats,

4    promises other than the promises contained in the

5    plea and cooperation agreement, that he has not been

6    coerced to do so.

7             He understands his right to a trial by

8    jury, which he's waived.  He understands his right

9    to remain silent against self-incrimination, which

10   he's waived.

11            He's admitted the factual basis by signing

12   the plea agreement and as well as acknowledging it

13   in open court and explaining his participation in

14   Count 1, 2, and 3.

15            The Court will, in entering judgment,

16   direct Probation to prepare a pre-sentence

17   investigation report and will set this matter for

18   sentencing.  Mr. Miller, how far out?

19            MR. MILLER:  Your Honor, I think for now

20   the standard 90 to 120 days would be fine,

21   Your Honor.

22            THE COURT:  Okay.  Mr. Rascia, are you

23   going on vacation the end of July?

24            MR. RASCIA:  Well, Judge, I'll be spending

25   my summer vacation with Judge Gettleman, so.

 1          THE COURT:  Okay.  When will you get done?

 2          MR. RASCIA:  Well, we have a trial that's

 3    scheduled to begin with him June the 1st and,

 4    depending on the number of Defendants, it may take

 5    as little as two weeks or as long as eight weeks.

 6          THE COURT:  Why don't we do this.  Why

 7    don't we set up a status the end of June, telephone,

 8    and see where Probation is at with the pre-sentence

 9    report and then set the sentencing date after that

10    at a time convenient to your schedule and see where

11    Probation is at with the pre-sentence.  Does that

12    sound okay, Mr. Miller?

13          MR. MILLER:  That's fine, Your Honor.

14          THE COURT:  Are you going to be around at

15    the end of July?

16          MR. MILLER:  I should be, Your Honor.  I

17    should be.

18          THE COURT:  So let's pick maybe --

19          MR. RASCIA:  Your Honor, how is June 25th?

20    That's a Thursday.

21          THE COURT:  June 25th.  Let me go to my

22    calendar.  I'm going to head up to a State Bar

23    meeting at Lake Geneva, so we've got to move it to

24    the day before.  How about the afternoon of

25    June 24th?  As late as you want it.

 1          MR. RASCIA:  Would four o'clock be okay?

 2          THE COURT:  Four o'clock is okay.

 3  Remember, I was in here last night at 6:00 when

 4  Mr. Miller called me, so we'll set this matter for a

 5  telephone status conference at four o'clock on

 6  Wednesday, June 24th.  We'll also contact Mr. Bryant

 7  so that he can be on the line.  Is there anything

 8  further, Mr. Miller?  The Court vacates the jury

 9  trial for tomorrow and --

10          MR. MILLER:  Nothing further, Your Honor.

11  Thank you.

12          THE COURT:  -- so the next appearance date

13  is by telephone, four o'clock, Wednesday, June 24th.

14  Anything further, Mr. Rascia?

15          MR. RASCIA:  No, Your Honor.  Thank you.

16          THE COURT:  That's all for the record.

17  Thank you, gentlemen.

18      (The proceedings concluded at 11:51 a.m.)

19

20

21

22

23

24

25

<u>CERTIFICATION</u>

1

2

3          I, JILL NICOLE STEVENS, Certified

4   Shorthand Reporter, Registered Professional Reporter

5   and Notary Public of the State of Illinois, do

6   hereby certify that I reported in shorthand the

7   proceedings had in the change of plea hearing in the

8   above-entitled cause; that I thereafter caused the

9   foregoing to be transcribed by computer-aided

10  transcription, which I hereby certify to be a true

11  and accurate transcript of the proceedings had

12  before the Honorable Chief Judge Michael P.

13  McCuskey, Judge of said Court.

14          Dated at Villa Grove, Illinois,

15  November 5, 2021.

16

17

18

19          _____

            Jill Nicole Stevens, Reporter
20

21

22

23

24

25